NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-466-JBC

PAUL ASHLEY TESTER                                                                                               PLAINTIFF

VS:                            **MEMORANDUM OPINION AND ORDER**

DR. JAMES HURM, et al.                                                                                      DEFENDANTS

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

Paul Ashley Tester, who is currently incarcerated at the Lee Adjustment Center ("LAC"), a Corrections Corporation of America facility in Beattyville, Kentucky, has submitted a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, together with a Motion to Proceed *in forma pauperis*. The Motion was granted by separate Order.

The Complaint is now before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

In the Court's screening of a *pro se* pleading, the document is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in the *pro se* litigant's complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C.

§ 1915(e)(2)(B).

## CLAIMS

Plaintiff complains that at LAC (1) his medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment; (2) he is being deprived of equal protection of the laws; (3) he is being denied grievances in violation of the First Amendment; and (4) he is not being accommodated in conformity with the requirements of the Americans with Disabilities Act ("ADA").

## DEFENDANTS

As the Defendants, the Plaintiff has named the following personnel at LAC: (1) Dr. James Hurm; (2) Nurse Supervisor Tammy Osbourne; (3) Warden Randy Stovall; and (4) Assistant Warden David Fry. Additionally, he names (5) the Corrections Corporation of America ("CCA"), which runs the LAC in Beattyville, and (6) Medical Director Gingy Grider, who is alleged to be with the CCA in Tennessee.

## RELIEF REQUESTED

Plaintiff seeks damages and injunctive relief in the form of an order to the Defendants to restore his prescription medication (ultram) to him.

## ALLEGATIONS

Plaintiff has submitted a complaint form and grievance forms. The following is a summary or construction of his allegations.

Tester states that his personal physician in Vermont and a physician with the Vermont Department of Corrections prescribed "ultram" to him for alleviating pain

which he has suffered since a "work related accident" in November of 2003 purportedly rendered him disabled. Apparently the Plaintiff was transferred from a Vermont prison to the LAC in July of 2007, as he claims that the complained-of actions by the Defendants began on that date and are continuing.

Upon Plaintiff's arrival at the LAC, "Dr. Hurm took me off of it [ultram] for no reason. I have asked for it back many times but to no avail. Tammy Osborne was notified as well as Gingy Grider, Randy Stovall and CCA medical staff." Additionally, Tester claims to have notified Defendant David Frye about his obligations under the ADA and HIPPA; two of his attached exhibits are dated in July of 2008, and show that he wrote a letter to Frye about accommodations which Tester purportedly requires and that he signed a medical release form directed to Frye.

With regard to his communications with the other named Defendants, Plaintiff indicates only that he filed a grievance on July 3, 2008, and another on November 3, 2008; and he requested a hearing from the Grievance Committee on July 28, 2008. His exhibits include copies of both grievances, one containing his demand for "a standard of medical care conforming to constitutional requirements" and the other requesting to "have me back on my ultram." Attached to each is a continuation page signed by Tester, who details his physical limitations; describes his pain and past use of "ultram;" and quotes the LAC doctor as follows: "Dr. Hurm told Grievant 'Ultram could only be given for five (5) days per FDA guidelines.'"

Plaintiff, however, does not check the complaint form's boxes for reporting that

3

he pursued either the July or November – or any other – grievance to the warden or higher.

**DISCUSSION**

Tester's complaint has several deficiencies. First, it is not clear that the prisoner-plaintiff exhausted his administrative remedies before filing this action. As part of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 §§ 801-810 (effective April 26, 1996), several federal statutes were amended and one now requires that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Tester has shown that (1) there was an institutional administrative remedy scheme available to him at the LAC; (2) the administrative procedures included appeals of issues to the warden and then to the Commissioner of Corrections; and (3) he began two administrative grievances about the medical issue. He has not, however, demonstrated that he properly pursued any grievance the level of the Commissioner, which was the level required to exhaust the remedy administratively. *See Woodford v. Ngo*, 548 U.S. 81 (2006). Indeed, Tester admits on the face of the complaint that he did not pursue any matter to the warden or higher. In such a situation, the complaint may be dismissed upon screening for his failure to exhaust the issue administratively before filing a civil lawsuit. *Jones v. Bock,* ___ U.S. ___, ___, 127 S.Ct. 910, 920-921 (2007).

Exhaustion is not an empty exercise. It would have provided the Court with a record in this case. The exhaustion requirement is also based upon several other reasons:

> The exhaustion requirement promotes: (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

*Lyons v. United States Marshals*, 840 F.2d 202, 205 (3rd Cir. 1988). Because Tester failed to demonstrate that he exhausted the appeal process, his lawsuit will be dismissed without prejudice.

Even if he had exhausted the available administrative process, Tester's complaint fails to state a claim upon which the court may grant relief. To plead a violation of the Eighth Amendment, a Plaintiff must show that the named defendant was deliberately indifferent to his suffering, but this plaintiff has failed to show any word or deed evidencing such a culpable state of mind in any named defendant. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (deliberate indifference defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result'") (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994).

To the contrary, Tester quotes Dr. Hurm as explaining why he could not have his drug of choice: that the Federal Food and Drug Administration has limited use of the drug to 5 days at a time. When a Plaintiff contends that a doctor has been

5

deliberately indifferent to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989).

Plaintiff's other constitutional claims have the same flaw. Tester fails to allege any factual basis for his First Amendment or Fourteenth Amendment claims. The pleadings in this case have not set forth the factual basis of these claims in a manner that gives the defendants proper notice and does not require either the defendants or this Court to "conjure up unpled allegations." "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits the facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977)). Therefore, dismissal without prejudice is also appropriate for Tester's remaining constitutional claims.

Finally, the court concludes that the instant plaintiff has also failed to state a claim with regard to the ADA. It is true that state prisons fall within the statutory

definition of "public entity" and maybe liable under the ADA for denying prisoners benefits of their programs, services, or activities. *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206 (1998). However, for a prisoner or any plaintiff to establish a prima facie case of discrimination under the ADA, a plaintiff must prove that he or she: (1) has a disability; (2) is otherwise qualified; and (3) is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under, the program solely because of the plaintiff's disability. *Dillery v. City of Sandusky,* 398 F.3d 562, 567 (6th Cir.2005) (citing *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir.2003)).

A prisoner such as the instant plaintiff who alleges that he is receiving incompetent treatment for a medical problem while in prison is not complaining of being excluded from a prison service, program, or activity, or of discrimination because of his disability and, therefore, fails to state a claim under the ADA.[1] *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996); *Stevenson v. Pramstaller*, 2008 WL

---

[1] Other components of an ADA claim are also not alleged by this prisoner-plaintiff. A plaintiff must also show that the discrimination was *intentionally* directed toward him or her in particular. *See Dillery,* 398 F.3d at 568 (" '[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular.' ") (citing *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir.1997)). *See also Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008). Additionally, the plaintiff's claims against any defendant in his individual capacity fail as a matter of law. *See e.g. Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 808, n. 1 (6th Cir.1999); *see also Basat v. Caruso*, 2008 WL 4457828, * 5 (E.D.Mich. 2008) (slip op.).

5085145, *3 (E.D.Mich. 2008).

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

Signed on January 3, 2009



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY